IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KEVIN C. KLIK, <br><br> *Plaintiff,* <br><br> v. <br><br> VERIZON VIRGINIA INC., A/K/A VERIZON VA, ET AL., <br><br> *Defendants.* | CIVIL NO. 6:15-CV-00002 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on cross-motions for summary judgment. Dkts. 23 & 26. Plaintiff, Kevin C. Klik, brought this action for alleged violations of the Americans with Disabilities Act against Verizon Virginia Inc. and Verizon Services Corp. (collectively "Verizon"). Specifically, Klik argues that Verizon's failed to reasonably accommodate him when he was injured. For the following reasons, I will grant Verizon's motion for summary judgment and deny Klik's motion.

## I. Introduction

### a. Background

Plaintiff Kevin Klik became a Cable Splicing Technician ("CST") for Verizon in 1999. Klik Dep. at 11.[1] For many years, Klik has been assigned to the Verizon office in Bedford, Virginia. Specifically, he was in the Construction group, which "normally placed new things in terms of new services." *Id.* at 12; Smyth Dep. at 23.[2] Since 2012, Verizon has employed

---

[1] Kevin Klik's deposition can be found at dkt. 24-1.

[2] Michael Smyth deposition can be found at dkt. 24-3.

1

between two and three CSTs in this office. Klik Dep. at 12. From 2012 to 2013, Klik reported to Local Manager Michael Smyth. Smyth Dep. at 10. Since January 2014, Klik has reported to Local Manager Jason Price.

### b. Job Duties

A CST must, *inter alia*, "perform physical requirements of the job, with or without a reasonable accommodation, including, but not limited to. . . moving and/or lifting items such as ladders, tools, air tanks, cable reels, test equipment, and other objects weighing up to 100 pounds, working aloft; climbing ladders and poles, and entering tunnels, building, trenches, crawl spaces, manholes, and other confined spaces to accomplish job tasks." Dkt. 24-2; *see also* Klik Dep. at 77 (acknowledging this job brief).

A CST must also be able to access aerial wires. *Id.* To reach these aerial wires, a CST must either climb poles or use a bucket truck. *Id.* However, as Klik admits, a bucket truck[3] cannot be used to reach many aerial wires around Bedford County due to hilly and residential areas. Klik Dep. at 79. Therefore, in many instances, the work requires use of a ladder. *Id.* at 24.

In addition, a CST must also be able to access underground wires. *Id.* at 44–45. To reach these wires, a CST must go underground through a manhole. *Id.* Once the CST has completed this underground work, they must be able to lift out of the manhole. As Klik describes, a CST would "grab the middle rails when you go up, and then you grab the top rails and pull yourself

---

[3] Klik was assigned a bucket truck before October 2012. Smyth Dep. at 39–40. However, this bucket truck was reassigned.

2

up." Klik Dep. at 45. The CST must therefore be able to lift their entire body weight. Klik weighed between 190 and 215 pounds. *Id.* at 46.

A CST must also be able to carry heavy objects. As Klik declared, a CST must be able to carry ladders and climb a pole using gaffs. *Id.* at 79–80. According to Smyth, these ladders weigh at least 64 pounds. *See* Smyth Dep. at 68 (describing the weight of the ladder). A CST must also carry and use other heavy equipment such as "tools, cable reels, test equipment and other objects weighing up to 100 pounds." Dkt. 26-2. Klik supports this assertion by stating that he has had to lift 100 pounds during his employment. For example, Klik has used a lashing machine—a machine that weighs between 70 and 90 pounds—"quite a bit." Klik Dep. 23. In addition, Klik has had to place batteries weighing up to 100 pounds on racks above waste level. *Id.* at 27. Sometimes Klik had to place these batteries alone due to the "tight spot" that the batteries must be placed. *Id.*

### c. Klik's Injury[4] and Verizon's Response

On October 31, 2012, Klik experienced pain in his left shoulder while lifting batteries. Dkt. 24-8; *see also* John Dep. at 13.[5] As a result of this pain, Dr. John ordered Klik to have an MRI and placed him on a ten-pound weight restriction as of October 31, 2012, pending the results of the MRI. Dkt. 24-8. Klik immediately faxed Dr. John's restriction to Verizon's

---

[4] This section will only concern the 2012 injury and subsequent actions. In 2009, Klik injured his shoulder and returned to work where he was given light duty work for the entire period of his restrictions. Klik Dep. at 42–43 (describing his job as a tool runner and also stating that Verizon usually does not employee a person just to run tools). While Klik uses Verizon's generosity in dealing with the 2009 injury as a sword to suggest Verizon's wrongdoing in this case, it cannot be accepted. Ultimately, Verizon's dealing with Klik in 2009 can only be commended. To suggest that giving an injured worker more benefits than the ADA requires at one point universally locks you into that standard for eternity would completely undermine the ADA, which sets the baseline not the ceiling, and would cause employers to "race to the bottom" by providing only the minimal accommodations necessary.

[5] Dr. Christopher John, M.D.'s deposition can be found at dkt. 24-9.

Worker's Compensation group. Klik Dep. at 54. Verizon accommodated Klik's lifting restriction by giving him light duty work. *Id.* Following the MRI, Klik's doctor recommended surgery which was scheduled for December 2, 2012. *Id.* at 60. From October 31 to December 2, Klik remained on light duty work.[6] *Id.* at 61.

Following his surgery and until April 8, 2013, Klik remained out of work on short-term disability ("STD") Leave receiving worker's compensation "wage replacement" payments. *Id.* at 63–64. On April 9, 2013, Klik returned to work with a five pound weight restriction, no overhead reaching restriction, and no climbing on ladders restriction. *Id.* At this time, Verizon placed Klik on the Medical Restriction Leave of Absence Policy ("MR-LOAPA") and began his 150 days of paid light duty assignments from that date.

On April 25, 2013, Klik submitted an accommodation request seeking the use of a bucket truck. Dkt. 24-10; *see also* Klik Dep. at 63. Although Klik was originally assigned a bucket truck prior to his injury, Klik's supervisor, Mr. Smyth, decided to reassign the bucket truck because he wanted "to fully utilize [the] one and only [bucket] truck that [he] had in that turf." Smyth Dep. at 42. Accordingly, Smyth left the bucket truck with "the person that was fully operational." *Id.* Therefore, Verizon denied the request as "it was not going to help him with his restriction of being unable to lift." Walsh Dep. at 38, 52.

On June 19, 2013, Dr. John increased Klik's lifting restriction from five pounds to fifteen pounds. John Dep. at 29. At that time, Dr. John expressed doubt over whether Klik would ever

---

[6] Verizon did not count this time frame towards Klik's 150 day of paid light duty assignment under MR-LOAPA. MR-LOAPA is a collectively bargained policy that sets time frames for which Verizon would accommodate employees who could not perform the essential functions of their jobs. Dkt. 24-7. Under MR-LOAPA, an employee will be given paid light duty work for 150 days. *Id.* After 30 days, Verizon will begin to look for available jobs that the employee can perform of equivalent or lower job classification plus give the employee a chance to apply to a job that would be a promotion. *Id.* After the 150 days, Verizon can place the employee on unpaid leave with benefits if no other job can be found. This period is 52 weeks (or a finite period beyond that as a reasonable accommodation in appropriate circumstances). *Id.*

be able to return to his previous work. Dkt. 24-11. However, Verizon continued to give Klik light duty assignments. Smyth Dep. at 77. On August 9, 2013, Dr. John observed that Klik had continued pain and minimal improvement. Believing that Klik had "little chance [to]. . . have more improvement," Dr. John recommended that Klik get a functional capacity evaluation ("FCE") to "have help get[] [Klik's] permanent restrictions." John Dep. at 31; *see also* dkt. 24-12. At that time, Dr. John felt that Klik had reached maximum medical improvement ("MMI") and was "very cautious about having him return [to Verizon] without some permanent restrictions, unless he markedly improved." John Dep. at 32.

Therefore, Dr. John's referred Klik for his FCE. At this FCE, Dr. John expects his patients "will explain to [the] physical therapist what their job entails. . . ." *Id.* at 36. Furthermore, Dr. John also reduced Klik's lifting restrictions to five pounds. *Id.* at 38. On August 26, 2013, the FCE examination was completed and the examiner concluded that Klik could lift up to 50 pounds to chest level and no more than 35 pounds overhead. Dkt. 24-13.[7] On September 4, 2013, Dr. John felt Klik was "safe to go back to work, would like him not to do any heavy lifting overhead for sure. He is at MMI." John Dep. at 40. Dr. John further accepted the FCE results that limited his lifting at 50 pounds to chest level and no more than 35 pounds overhead. *Id.* at 42, 51. Specifically, Dr. John stated Klik "may return to work/school on 9/5/13 with Full duty. No lifting more than 35 lbs overhead. No more than 50 lbs to waist/chest level. May climb. I definitely feel strongly that he needs to be on a lift truck. These restrictions are permanent."[8] Dkt. 24-14.

---

[7] This document was replaced with a redacted version found at dkt. 29-1.

[8] Klik suggests that he also requested to be recertified in pole climbing around this same time. However, he admits that "it was the restrictions [his] doctor imposed that prevented the Company from even sending [him] to be recertified." Klik Dep. at 113.

Klik's 150 days of paid light duty expired on September 23, 2013. The next day, Verizon placed Klik on leave of absence pursuant to MR-LOAPA. *See* supra footnote 6. On October 10, 2013, Klik, through his attorney, requested that Verizon return him to his position with two accommodations: a bucket truck and assignment of a working partner to assist in lifting more than 35 pounds overhead and more than 50 pounds to chest level. Dkt. 24-15. To consider these accommodations, a member of the Verizon's WPAT conducted an interactive dialogue with Klik. Dkt. 24-16. During this dialogue, Klik acknowledged that he was offered the opportunity to seek a vacant position—the Fiber Customer Support Analyst position. *Id.* However due to the relocation, Klik declined and there was no other vacant position within 35 miles of Bedford. Klik Dep. at 104–05, 107.

During this time, Klik claims that he could have lifted more than 50 pounds during the FCE, but admitted that he did not ask his treating physician for a new examination. *Id.* at 141. On December 2, 3013, Verizon's Workers Compensation administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), sent Dr. John a letter advising that the FCE administrator did not have a copy of the job description and attached the job description. Dkt. 24-18. On December 11, 2013, Dr. John responded to Sedgwick stating that he agreed with the FCE examiner even after reviewing the provided job description documentation—i.e., Klik was still subject to a 50 pound lifting restriction with 35 pound limitation overhead. Dkt. 24-18. On December 23, 2013, Klik requested a new FCE from Dr. John. John Dep. at 51. In January 2014, Klik underwent a second FCE which showed "dramatic improvement" and was released to return to full duties at his position. Dkt. 24-20; John Dep. at 52.

## II. Legal Standard

### a. Summary Judgment

Summary judgment is warranted if the Court concludes that no genuine issue of material fact exists for trial and that the moving party is entitled to judgment as a matter of law, based on the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits.[9] *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013) (citing Fed. R. Civ. P. 56). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a genuine issue of material fact exists, a party may not rest upon his own mere allegations or denials. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rather, the party must "proffer[] sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). To this end, a district court has an "affirmative obligation . . . to prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

---

[9] "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted). While this case presents this situation, I have avoided duplicative sections because I have accepted the facts as submitted mainly through Mr. Klik's own deposition testimony. *See Pennsylvania Life Ins. Co. v. Bumbrey,* 665 F. Supp. 1190, 1192–93 (E.D. Va. 1987) (describing the non-moving party shall have "his version of all that is in dispute accepted [and] all internal conflicts in it resolved favorably to him"). Furthermore, the parties, as evidenced through the cross motions, do not disagree on the facts in this case as much as they disagree on the legal significance of those facts.

### b. Americans with Disabilities Act ("ADA")

In 1990, the federal government enacted the Americans with Disabilities Act ("ADA"). The ADA prohibits any covered entity from discriminating "against a qualified individual with a disability because of the disability of such individual. . . ." *EEOC v. Kinney Shoe Corp.,* 917 F. Supp. 419, 424 (W.D. Va. 1996). A qualified disabled individual is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To establish a *prima facie* case of failure to accommodate under the ADA, the plaintiff must show: (1) that the individual was disabled within the meaning of the ADA; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Crabill v. Charlotte Mecklenburg Bd. of Educ.,* 423 Fed. App'x 314, 322 (4th Cir. 2011); *Haneke v. Mid-Atlantic Capital Mgmt.,* 131 Fed. App'x 399, 400 (4th Cir. 2005) (citing *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)). Ultimately, the ADA requires employers to make "reasonable" accommodations only for an otherwise "qualified individual with disability." *See* 42 U.S.C. § 12111(8).

### III. Analysis

#### a. Klik was not a "qualified individual"

To be a "qualified individual," Klik must show that "with or without reasonable accommodation, [he could] perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Shin v. Univ. of Md. Med. Sys. Corp.,* 369 Fed. App'x 472, 480 (4th Cir. 2010) (same); *Hill v. Verizon Maryland Inc.,* No. 07-

2123, 2009 U.S. Dist. LEXIS 59786, at *35 (D. Md. July 13, 2009) (plaintiff "bears the burden of demonstrating that he could perform the essential functions of his job with or without a reasonable accommodation"). "The ADA simply was not designed to protect the public from all adverse affects of ill-health and misfortune. Rather, the ADA was designed to assure that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps." *Hill*, 2009 U.S. Dist. LEXIS 59786, at *31 (quoting *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 200 (4th Cir. 1997)).

### i. Essential Functions

Therefore, the "essential functions of the employment position" must be determined. *See* 42 U.S.C. § 12111(8). Under ADA regulations:

> (2) A job function may be considered essential for any of several reasons, including but not limited to the following:
> (i) The function may be essential because the reason the position exists is to perform that function;
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2). The ADA also requires that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential function of the job." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(n)(3).

Therefore, the job duties described by Verizon must be given effect. In the CST job description, CSTs are required to work aloft, including carrying and climbing ladders and poles

using gaffs, working underground and lifting tools and equipment weighing up to 100 pounds. Dkt. 24-2; *see also* Klik Dep. at 77 (acknowledging this job brief). Klik admits that: (1) he has to lift lashers above his shoulders weighing between 70 and 90 pounds[10]; (2) lift batteries weighing up to 100 pounds and place them upon a rack above his waist, including bearing the full weight in "tight spot[s]"; (3) lift his own body weight out of manholes when performing underground work; and (4) lift and carry a ladder that weighs at least 64 pounds.[11] Klik Dep. at 21–23, 27, 31, 79, 88; Smyth Dep. at 68.

### ii. Klik's Inability to Perform These Functions with or without Accommodation

Klik is not a "qualified individual" as he could not perform these duties with or without an accommodation. Specifically, on September 4, 2013, Dr. Johns noted Klik "may return to work/school on 9/5/13 with Full duty. No lifting more than 35 lbs overhead. No more than 50 lbs to waist/chest level. May climb. I definitely feel strongly that he needs to be on a lift truck. These restrictions are permanent."[12] Dkt. 24-14.

---

[10] Klik contests the actual weight of the lasher suggesting that Reynolds noted that it weighed about 50 to 60 pounds depending on the models. Pl's Opp. Br. 10. Either way, both parties (Reynolds and Klik) state that certain models of the lasher weigh over 50 pounds which make any dispute over the exact weight non-material as it would be more than Klik could have lifted under Dr. John's orders.

[11] At the hearing, Klik suggested that Verizon could have purchased a lighter ladder for his use. While he never requested that ladder from Verizon and it was only considered in his Reply brief, the lighter ladder is also not a reasonable accommodation due to the fact that ladders must meet Occupational Safety and Health Administration standards. Klik provides no evidence to rebut the fact that lighter ladders would meet those standards.

[12] Klik gives two contentions that must be dispelled. First, Klik suggests that the "may climb" would allow Klik to "climb" out of a manhole rather than "lift himself" out of a manhole. To hold Verizon accountable for the imprecision of Dr. John's note would completely undermine the purpose of the ADA—i.e., to ensure that a "truly disabled, but genuinely capable individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps." *Hill*, 2009 U.S. Dist. LEXIS 59786, at *31. Ultimately, the term "lift" is defined as "rais[ing] to a higher position or level." In this case, Verizon was relying on an understandable reading of Dr. John's note—Klik could not lift himself out of the manhole—and if this understanding was harmful to the plaintiff then he should have requested Dr. John make a clarification when discussing reasonable accommodations with Verizon.

With these restrictions and with any accommodation (including a bucket truck),[13] Klik could not perform the essential functions of a CST. First, Klik could not lift a lasher above his shoulders to work due to it weighing more than the 35 pounds overhead limit. Klik Dep. at 21–23. Second, Klik could not lift batteries weighing up to 100 pounds and place them upon a rack above his waist as it would violate the 50 pound weigh restriction. Klik Dep. at 27, 88. Furthermore, Klik could not expect someone else to come perform this task or help him. As Klik admits, these batteries are sometimes placed in "tight spot[s]" which would require him to do it alone. In addition, employees whose restrictions require the elimination or reallocation of essential job functions are not qualified individuals with a disability. *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 400–01 (2002); *Hill v. Harper*, 6 F. Supp. 2d 540, 544 (E.D. Va. 1998). Third, Klik could not lift his own body weight out of a manhole when performing underground work. Klik Dep. at 79. Lastly, Klik could not carry a 28-foot ladder as it would violate his 50 pound weight restriction.[14] Smyth Dep. at 68.

While Klik can point to each of these functions and argue that they are not required every day, this argument is unpersuasive. For example, any of these functions could be required at any time for a CST as it is hard to predict accurately exactly what a particular job will entail. Reynolds Dep. at 65. In *Hill*, the United States District Court for the District of Maryland held that a company's inability to predict precisely when an employee might be required to climb did

---

Second, Klik suggests that Verizon should be chastised for failing to give the original FCE examiner the job description. Once again, Verizon cannot be held accountable for the actions of others. Verizon did not request Klik get this FCE exam. Furthermore, Dr. John suggested that he intended for Klik to describe his job duties to the examiner as Klik clearly knew he could be required to lift more than 50 pounds. John Dep. at 36.

[13] Each and every job listed below would not be altered due to the use of a bucket truck.

[14] Klik cannot argue that Verizon should have another employee carry the ladder as that would also mean he is not a qualified employee. *Hill v. Harper*, 6 F. Supp. 2d 540, 544 (E.D. Va. 1998).

not undercut the company's assertion that climbing is an essential function of a telephone technician position. 2009 U.S. Dist. LEXIS 59786, at *35 (granting summary judgment because there is no way to know what the technician is required to do until he or she gets there).

Therefore, Klik's complaint fails as a matter of law because he is not considered a "qualified employee" which is the threshold matter under the ADA.[15] 42 U.S.C. § 12111(8).

### b. Klik's request for accommodations were not reasonable and Verizon provided reasonable accommodations

Even assuming, *arguendo*, that Klik qualifies under the statute, summary judgment is still proper for the Defendant due to two reasons: (1) Klik's request for accommodations were not reasonable and (2) Verizon provided Klik with reasonable accommodations. *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d. Cir. 2002) (noting that not every accommodation is reasonable or required); *Donahue v. Consolidated Rail Corp.,* 224 F.3d 226, 232 (3d Cir. 2000) (reasonable accommodations does not require an employer to alter or modify the essential functions of a position).

Klik requested three accommodations: (1) assignment of a bucket truck; (2) assign a partner for every assignment; and (3) pick "isolated tasks" for him to do. First, the assignment of a bucket truck is not reasonable because it has no bearing on the ability of Klik to perform all the essential job functions as described above. For example, due to the terrain, the bucket truck becomes useless at some job sites. Klik Dep. at 79; *see also* Walsh Dep. at 20–21. Therefore, it

---

[15] Under the case law, an employee can be considered qualified if he could be reassigned to a vacant position. *See Wilburn v. City of Roanoke*, No. 7:14-cv-00255, 2015 U.S. Dist. LEXIS 114097, at *6 (W.D. Va. Aug. 27, 2015). However, Klik admitted that he turned down the ability to interview for the Maryland position and that no other position was available within 35 miles of Bedford. Klik Dep. at 104–05, 107. Furthermore, Klik alleges that three individuals "have disabilities and they were afforded a job underneath [his] title." Klik Dep. at 14. These three individuals are: Butch Cope, Robert Niblett, and Rhonda Moyers. However, Klik provides no evidence to suggest this allegation. Furthermore, Verizon has provided undisputed evidence to prove that Niblett and Cope have no medical restrictions and Moyers' restrictions were lifted in November 2015. Dkts. 24-21; 24-22; 24-23. Before November 2015, Moyers' restrictions were accommodated under the MR-LOAPA. Dkt. 24-22.

would not be reasonable to take the only working bucket truck away from a fully functioning employee that can do every job and give it to an employee that is limited and may or may not be able to perform the task upon arriving at the location. *Buskirk v. Apollo Metals*, 307 F.3d 160, 168 (3d. Cir. 2002) (noting that not every accommodation is reasonable or required).

Second, the assignment of a partner for every assignment is also unreasonable.[16] An employer is "not required to reallocate essential [job] functions."[17] 29 C.F.R. pt. 1630, app. 1630.2(o). Furthermore, "an accommodation that would result in other employees having to work harder or longer hours is not required." *Wallace v. Rite Aid Corp.,* No. 10-2190, 2012 U.S. Dist. LEXIS 16359, at *11 (D. Md. Feb. 1, 2012); *Boitnott v. Corning Inc.,* No. 7:06-cv-00330, 2010 U.S. Dist. LEXIS 59269, at *33 (W.D. Va. June 15, 2010); *see also Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1125 (10th Cir. 1995). Ultimately, Klik's request would require a partner to do all the "heavy lifting" that would be outside his restriction. Verizon is not required to do this as they have "legitimate administrative and customer service concerns" to ensure that each of their CSTs are capable to perform their assigned work. *Lodderhose v. Viacom Cable, Inc.,* No. 96-4282, 1998 U.S. Dist. LEXIS 23381, at *22–23 (N.D. Cal. 26, 1998); Reynolds Dep. at 65–66.

Third, the request that Verizon pick "isolated tasks" is also unreasonable. *See Allen v. Pacific Bell*, 212 F. Supp. 2d 1180, 1194–95 (D. Cal. 2002) (holding employer is not required to handpick jobs for an employee). Furthermore, it is almost impossible for the company to pick these "isolated tasks" as Verizon cannot predict what certain jobs would entail before the CST

---

[16] Whether partners are normally assigned to projects for Verizon is irrelevant. Klik admits that at times he has to lift and move things on his own.

[17] In his opposition brief, Klik argues that the functions he wanted to be reassigned were only "marginal." *See e.g., Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1260 (11th Cir. 2001). However, as discussed above, the ability to lift up to 100 pounds is an essential job function, not marginal.

13

gets to the site. Reynolds Dep. at 65. Therefore, this accommodation would require Verizon to provide a partner to go with Klik to every job site to do things outside of the "isolated tasks", which, as described above, is also unreasonable. *Wallace v. Rite Aid Corp.,* No. 10-2190, 2012 U.S. Dist. LEXIS 16359, at *11 (D. Md. Feb. 1, 2012); *Boitnott v. Corning Inc.,* No. 7:06-cv-00330, 2010 U.S. Dist. LEXIS 59269, at *33 (W.D. Va. June 15, 2010); *see also Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1125 (10th Cir. 1995).[18]

In addition to these requested accommodations being unreasonable, Verizon provided reasonable accommodations to deal with Klik's disability. *See EEOC v. Firestone Fibert & Textiles Co.,* 515 F.3d 307, 312–13 (4th Cir. 2008) (an employer is not required to provide an employee with their preferred accommodation). Under the MR-LOAPA, Verizon provided Klik with paid light duty work (an extended time outside of the 150 days by not counting the first portion of light duty work) and unpaid leave with certain benefits when Dr. Johns opined that Klik's disability was permanent. *Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 344–45 (4th Cir. 2013) ("For purposes of the ADA, 'reasonable accommodations' may comprise. . . 'permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment.'").

Therefore, summary judgment must be granted for Defendant due to the unreasonableness of Klik's accommodation request and the reasonable accommodations that Verizon provided through the MR-LOAPA.[19]

---

[18] Due to the unreasonableness of these requests, any argument that Verizon failed to engage Klik in an interactive dialogue also fails, whether Verizon did or did not engage in such dialogue. *See Kemp v. Volvo Grp. N. Am.,* No. 7:11-cv-00535, 2013 U.S. Dist. LEXIS 9454, at *10 (W.D. Va. Jan. 24, 2013) (describing that succeeding on an argument concerning failure to engage in an interactive process requires "demonstra[tion] that the employer's failure to engage in the interactive process resulted in the failure to identify an appropriate accommodation for the disabled employee" ).

[19] Klik also unclearly asserts a new "claim" concerning disparate treatment under the disability discrimination laws in his brief. In this claim, Klik argues that the unpaid leave provision of the MR-LOAPA is an adverse employment action. Pl's Br. 22–25; *see also* Def.'s Opp. Br. 21–22. Although this claim is not clearly articulated in his brief nor

## IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment (dkt. 23) will be granted, while Plaintiff's will be denied (dkt. 26). First, Klik is not a "qualified individual" due to the fact that he would be unable to perform his essential job functions even with reasonable accommodations. Second, Klik's accommodation requests were not reasonable. Lastly, Verizon provided Klik with reasonable accommodations through the MR-LOAPA.

Entered this __8th__ day of March, 2016.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

found in the complaint, it nevertheless can be disposed of in favor of Verizon. *See e.g.,* dkt. 1 (complaint concerns only reasonable accommodations such as the bucket truck). To establish disability discrimination, Klik must demonstrate that: (1) he had a disability as defined in the ADA; (2) he was a "qualified individual;" and (3) he suffered an adverse action against him on account of his disability. *See Young v. United Parcel Service, Inc.,* 707 F.3d 437, 443 (4th Cir. 2013). First, Klik is not a "qualified individual" as discussed above. Second, he did not suffer an adverse employment action "*on account* of his disability." *Id.* (emphasis added). The unpaid leave that Klik received is not an adverse employment action but rather a reasonable accommodation. *See Wilson v. Dollar General Corp.,* 717 F.3d 337, 344–45 (quoting 29 C.F.R. § 1630.2(o) (2011)). Lastly, even assuming, *arguendo*, that this action was adverse, unpaid leave for an employee who cannot perform essential job functions is justified and non-discriminatory. *See e.g., Andrews v. Geo Group, Inc.,* 2007 WL 3054967, at *6–7 (D. Colo. Oct. 18, 2007); *Kinsey v. City of Jacksonville,* 2005 WL 3307211 (M.D. Fla. Dec, 06, 2005) (placement of involuntary unpaid leave was based on legitimate non-retaliatory reasons), *aff'd* 189 Fed. Appx. 860 (11th Cir. 2006).